# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| In the Matter of: | } | |
| | } | |
| BILL HEARD ENTERPRISES, INC., et al. | } | CASE NO. 08-83029-JAC-11 |
| | } | CHAPTER 11 |
| | } | (Jointly Administered) |
| Debtor(s). | } | |
| | | |
| TWENTIETH CENTURY LAND CORP., | } | A.P. No. 09-80023-JAC-11 |
| | } | |
| Plaintiff(s), | } | |
| v. | } | |
| | } | |
| LANDMARK NORTH FREEWAY, LTD. | } | |
| ISTAR FINANCIAL, INC. d/b/a AUTOSTAR, | } | |
| SUCCESSOR IN INTEREST TO FALCON | } | |
| FINANCIAL, LLC, et al., | } | |
| | } | |
| Defendant(s). | } | |
| | | |
| HSBC BANK USA, AS TRUSTEE FOR THE | } | |
| REGISTERED HOLDERS OF FALCON | } | |
| AUTO DEALERSHIP LOAN TRUST 2003-1 | } | |
| LOAN-BACKED BONDS, SUCCESSOR-IN- | } | |
| INTEREST TO FALCON FINANCIAL, LLC | } | |
| d/b/a FALCON LENDING, LLC, | } | |
| | } | |
| Counterclaim Plaintiff | } | |
| v. | } | |
| | } | |
| TWENTIETH CENTURY LAND CORP., | } | |
| | } | |
| Counterclaim Defendant. | } | |

## MEMORANDUM OPINION

Now before the Court for consideration are cross motions for summary judgment filed by

Twentieth Century Land Corporation ("Twentieth Century") and HSBC Bank USA ("HSBC").

Twentieth Century seeks an order granting summary judgment as to its claims in the above styled

action and as to all counterclaims asserted by HSBC. HSBC seeks an order granting summary judgment on Twentieth Century's amended complaint and partial summary judgment on its counterclaims against Twentieth Century. Also before the Court is HSBC's motion for partial summary judgment against William Heard and motion for partial summary judgment against Landmark North Freeway, Ltd. and Landmark I-45, Inc.

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, as made applicable to this adversary proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[1] "In making this determination, the court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment."[2] Where both parties seek summary judgment, the court must consider each motion independently and apply the applicable standards to each motion to determine whether summary judgment is appropriate under either motion.[3]

Upon due consideration of the pleadings and respective submissions of the parties, the Court finds that there are no genuine issues of material fact in the present case and concludes that summary judgment is due to be entered in favor of Twentieth Century on all counts and against HSBC. The

---

[1]    *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Gray v. Manklow (In re Optical Tech., Inc.),* 246 F.3d 1332, 1334 (11th Cir. 2001); and *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112 (11th Cir. 1993).

[2]    *Chapman v. A1 Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000).

[3]    Smith v. Fendley (In re Allied Sign Co., Inc.), 280 B.R. 694 (Bankr. S.D. Ala. 2001).

Court further finds that summary judgment is due to be entered in favor of HSBC and against William Heard, Landmark North Freeway, Ltd. and Landmark I-45, Inc.

## PROCEDURAL HISTORY

On September 28, 2008, Bill Heard Enterprises, Inc. ("BHE") and several related entities filed for relief under Chapter 11 of the Bankruptcy Code and sought joint administration of their petitions. Prepetition, the debtors owned and operated fourteen automobile dealerships in seven states. On February 6, 2009, Twentieth Century, one of the jointly administered debtors, filed a complaint against Landmark North Freeway, Ltd. ("Landmark North"), a Texas limited partnership, and others to avoid the prepetition transfer of real property located at 9111 North Freeway, Houston, Texas to Landmark North pursuant to 11 U.S.C. § 544(a)(3) and to determine the validity, priority or extent of Landmark North's interest in the property. Twentieth Century seeks to set aside the prepetition transfer on the grounds that the Warranty Deed transferring the property from Twentieth Century to Landmark North was never recorded and is, therefore, void under Texas law as to a subsequent purchaser for value without notice.

On March 19, 2009, Twentieth Century filed an amended complaint adding HSBC, as Trustee for the Registered Holders of Falcon Auto Dealership Loan Trust 2003-1 Loan Backed Bonds ("HSBC"), as a defendant. HSBC is the current holder of a Deed of Trust pursuant to which Landmark North purported to "mortgage, grant, bargain, sell, pledge, assign, warrant, transfer and convey . . . and grant a security interest . . . ." in the subject property to Falcon Financial, LLC. The Deed of Trust secured a $20,000,000 loan from Falcon to Landmark North. Through the amended

complaint, Twentieth Century seeks to avoid Landmark North's granting of the Deed of Trust to Falcon, HSBC's predecessor in interest.

On June 17, 2009, this Court entered an order granting HSBC's motion to dismiss all claims asserted by Landmark North and William T. Heard ("Heard") against HSBC for failure to state a claim upon which relief could be granted.[4]  The Court found that plaintiffs, Landmark North and Heard, clearly waived their claims against HSBC by virtue of certain provisions contained in the loan documents and further found that Falcon did not stand in a fiduciary relationship with plaintiffs. On July 21, 2009, the Court entered an order in conformity with its findings in *Bill Heard Enterprises, Inc. v. Landmark North Freeway, Ltd. (In re Bill Heard Enterprises, Inc.),* 406 B.R. 98 (Bankr. N.D. Ala. 2009), granting Falcon's motion to dismiss the third-party complaint and counterclaim of Landmark North and Heard against Falcon for failure to state a claim upon which relief could be granted.   The case is now before the court on cross motions for summary judgment filed by Twentieth Century and HSBC.

## FACTUAL BACKGROUND

The property at issue is located at 9111 North Freeway, Houston, Texas.  Landmark Chevrolet has operated as a Chevrolet franchised dealership on the property since the 1970's.  On October 1, 1985, Twentieth Century purchased the subject property.

In October of 1985, BHE, through Landmark Chevrolet Corporation which is now known as Landmark Chevrolet, Ltd., purchased the Chevrolet dealership ("Landmark Chevrolet") and

---

[4]    *See* Bill Heard Enterprises, Inc. v. Landmark North Freeway, Ltd. (In re Bill Heard Enterprises, Inc.), 406 B.R. 98 (Bankr. N.D. Ala. 2009).

Twentieth Century leased the property to the dealership.  At all times, Landmark Chevrolet operated the automobile dealership on the subject property under the name Landmark Chevrolet.   Landmark Chevrolet's operation of the property as an automobile dealership was visible to the public and did not materially change since it first began leasing the property from Twentieth Century in 1985 until the filing of BHE's bankruptcy petition.

Falcon Financial, LLC ("Falcon"), is a company that specializes in lending to automobile dealerships.  In October of 2002, Falcon agreed to make a $20,000,000.00 loan to BHE.  To make the loan, Falcon required BHE to form a "bankruptcy remote single purpose entity" that would act both as the borrower under the loan and owner of the subject property securing the loan.   On November 15, 2002, BHE formed the bankruptcy remote single purpose entity named Landmark North Freeway, Ltd.

On December 4, 2002, as part of the loan transaction, Twentieth Century, as grantor, executed a Warranty Deed conveying the subject property to Landmark North, as grantee.[5]  There was no visible change to Landmark Chevrolet's possession or operation of the property after Twentieth Century transferred the subject property to Landmark North.

The December 4, 2002 Warranty Deed transferring the property from Twentieth Century to Landmark North was never recorded. The Warranty Deed, a Deed of Trust by which Landmark North mortgaged the subject property to Falcon, and other loan documents were forwarded to Falcon's counsel who then forwarded the Deed of Trust and other loan documents to the escrow agent, Lawyers Title Insurance Company, for closing and recording.   The Warranty Deed was not, however,  forwarded to Lawyers Title.  The original, unrecorded, Warranty Deed was found in the

---

[5]     Although the Warranty Deed was signed by Heard on December 4, 2002, the deed is dated November 15, 2002.

files of Falcon Financial's counsel during this litigation. Falcon's attorney, Greg Murphy, Esq., testified in his deposition that he did not know the Warranty Deed had not been recorded until he first learned of this lawsuit.

On December 12, 2002, Lawyers Title closed the loan and distributed the loan proceeds as instructed. Landmark North directed that $7,187,393.32 of the loan proceeds be used to satisfy existing mortgages on the property in favor of General Motors Acceptance Corporation ("GMAC"). After the loan closing, GMAC recorded three documents entitled "Release of Lien," which evidenced that three separate GMAC deeds of trust on the subject property had been released. Landmark North also used $317,034.84 of the loan proceeds to pay Twentieth Century's outstanding tax liability. The remaining loan proceeds were advanced directly to BHE to refinance debt it had incurred over time.

On December 23, 2002, Lawyers Title recorded the Deed of Trust in the real property records of Harris County, Texas. Although the Warranty Deed had not been recorded, on December 23, 2002, Lawyers Title issued a final Mortgage Policy of Title Insurance insuring Falcon from any defect in, invalidity or unenforceability in its lien on the subject property. Because the Warranty Deed was not recorded, a claim was made under the title policy and Lawyers Title is providing the defense in this adversary proceeding.

On December 23, 2002, Falcon assigned its interest in the loan documents to ABN AMRO Bank, NV. Subsequently, on July 18, 2003, ABN assigned its interest in the loan documents to HSBC.

In connection with the loan, Landmark North entered into a lease agreement with Landmark Chevrolet for the property. The real property consists of two tracts of land divided into four parcels.

The property tax records from the Harris County Tax Accessor-Collector indicate that Landmark Chevrolet is the owner of at least one of the parcels.  In addition to the tax records, the Harris County Appraisal District records identify Landmark Chevrolet as the owner of one of the parcels.

Since 1985 and at the time of the loan transaction in 2002, Landmark Chevrolet operated a car dealership, service center and related facilities on the property.  The Landmark Chevrolet dealership was located adjacent to Interstate 45, a heavily trafficked freeway that runs through the city of Houston.  It is undisputed that Landmark Chevrolet signage was visible to the public throughout the property and that there was no signage anywhere on the property for Twentieth Century nor Landmark North.

## CONCLUSIONS OF LAW

**I.       Twentieth Century is entitled to summary judgment pursuant to 11 U.S.C. § 544(a)(3).**

Section 544(a)(3) of the Bankruptcy Code provides that:

> (a)       The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is avoidable by–
>
> * * * *
>
> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the statues of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such purchaser exists.

Section 544(a)(3) authorizes the trustee or a debtor-in-possession to avoid any real property transfer "that is not perfected and enforceable against a bona fide purchaser at the time the petition

is filed."[6] The Eleventh Circuit has explained that the purpose of § 544 is "to arm the trustee with

sufficient powers to gather in the property of the estate. Thus, the trustee is considered a *bona fide*

purchaser of real property in the bankruptcy estate and may avoid obligations of the debtor that are

avoidable by such a purchaser."[7] The parties agree that the trustee or debtor-in-possession's rights

as a bona fide purchaser under § 544 are to be determined under applicable state law, which in this

case is Texas law as the subject property is located in Texas and the loan documents provide that

Texas law is the governing law state.


### A.      Chain of Title

Under Texas law, "[a] conveyance of an interest in real property . . . is void as to a

subsequent purchaser if the interest was not recorded at the time of the subsequent purchase and the

purchaser paid valuable consideration without notice of the unrecorded interest."[8] The Fifth Circuit

has explained that a bona fide purchaser under Texas law "is one who acquires (apparent) legal title

to property in good faith for a valuable consideration without . . . notice of an infirmity in the title."[9]

Twentieth Century argues that the Warranty Deed is void under Tex. Prop. Code §13.001

as to a subsequent purchaser for value without notice because it was not filed for record as required

---

[6]      Matter of Hamilton, 125 F.3d 292, 298 (5th Cir. 1997).

[7]      In re Halabi, 184 F.3d 1335, 1337 (11th Cir. 1999).

[8]      Matter of Hamilton, 125 F.3d 292, 298 (5th Cir. 1997).   *See also* Tex. Prop. Code Ann. § 13.001(a), which reads:

> (a) A conveyance of real property or an interest in real property or a mortgage or deed of trust is void as to a creditor or to a subsequent purchaser for a valuable consideration without notice unless the instrument has been acknowledged, sworn to, or proved and filed for record as required by law.

[9]      See Hamilton, 125 F.3d at 298.

by law.  Accordingly, under §544(a)(3) of the Bankruptcy Code, Twentieth Century asserts that it can avoid the Warranty Deed and the conveyance of the property from Twentieth Century to Landmark North, because the conveyance would be void as to a bona fide purchaser under Texas law.

Under § 544 the actual knowledge of the trustee or debtor-in-possession is irrelevant. Instead, the issue is whether a hypothetical purchaser would be charged with implied knowledge of a prior unrecorded ownership interest, by constructive or inquiry notice.[10]  "Under Texas law, constructive notice is given by properly recorded instruments and charged to a person as a matter of law, regardless of the person's actual knowledge."[11]  Because the Warranty Deed was not recorded as of the petition date, a hypothetical purchaser could not be charged with constructive notice of the deed as a matter of law.

Instead, HSBC argues that Twentieth Century cannot avoid its transfer of the subject property because a hypothetical purchaser under § 544(a)(3) would have had constructive notice of Landmark North's interest in the subject property by virtue of the recorded Deed of Trust, the information contained in Harris County tax accessor's records and appraisal records identifying Landmark Chevrolet as the owner of one parcel of the subject property, and by virtue of GMAC's release of its mortgages when the transfer occurred.

Under Texas law, a purchaser is not charged with constructive notice of any document recorded outside of its chain of title.  Instead a purchaser of real estate is only charged with constructive notice of "information contained in instruments recorded which are in his chain of title

---

[10]     *Id.* at 299.

[11]     *Id.*

at the time he purchases the property."[12] "Chain of title refers to the documents which show the successive ownership history of the land. The chain of title is 'the successive conveyances, commencing with the patent from the government, each being a perfect conveyance of the title down to and including the conveyance to the present holder.'"[13] "A party is not charged with constructive notice of a recorded instrument which is not within his chain of title."[14]

Although HSBC argues that Landmark Chevrolet's identification in the tax records as the owner of one parcel of the subject property and the recorded Deed of Trust imposed a duty of inquiry on any hypothetical purchaser, it is undisputed that neither the tax records nor the recorded Deed of Trust were in the chain of title to the subject property. The chain of title was broken when Landmark North's ownership interest in the property was not recorded. Accordingly, the recorded Deed of Trust which attached to Landmark North's unrecorded ownership interest fell outside a hypothetical purchaser's chain of title. Because these documents are not in the chain of title, a hypothetical purchaser could not be charged with constructive notice of same as a matter of law.

Furthermore, bankruptcy courts interpreting Texas law have held that a hypothetical purchaser under § 544(a)(3) has no duty to inquire into a security interest where recorded documents indicate that the interest has been released.[15] Accordingly, the Court finds that a hypothetical

---

[12] See Cadle Co. v. Caamano, 930 S.W. 2d 917, 920 (Tex. App.-Houston 1996)(explaining that a purchaser of land is only charged with information contained in instruments of record which are in his chain of title at the time he purchases the property); Chesapeake Exploration, LLC v. Valence Operating, 2008 WL 4240486 * 10 (S.D. Tex. 2008)( explaining that a party is not charged with constructive notice of a recorded instrument which is not within his chain of title).

[13] Chesapeake Exploration, LLC v. Valence Operating, 2008 WL 4240486 *10 (S.D. Tex. 2008).

[14] *Id.*

[15] In re Tilton, 297 B.R. 478 (E.D. Tex. 2003)(finding that a hypothetical purchaser under § 544(a)(3) does not have a duty to inquire into a security interest where the recorded documents indicate that

purchaser would not have a duty to inquire into the nature of GMAC's recorded releases where the releases simply provided that GMAC's deeds of trust on the subject property had been satisfied and released.[16]  Although HSBC argues that a hypothetical purchaser would ask whether the recorded mortgage releases were the result of refinancing, the Court finds that HSBC's argument is speculative as it is just as likely that the mortgages were simply satisfied.

### B.    Third-Party Tenant's Possession of Property

HSBC argues that a hypothetical purchaser would have had constructive notice of Landmark North's interest in the subject property by virtue of Landmark Chevrolet's possession of same.  In *Madison v. Gordon*, 39 S.W.3d 604 (Tex. Sup. Ct. 2001), the Texas Supreme Court explained that '[o]ne purchasing land may be charged with constructive notice of an occupant's claims."[17]  The implied notice doctrine "applies if a court determines that the purchaser has a duty to ascertain the rights of a third-party possessor."[18]  The duty arises "only if the possession is visible, open, exclusive, and unequivocal."[19]  "Possession that meets these requirements . . . affords notice of title

the interest is no longer enforceable).

[16]    The Court notes that the Eleventh Circuit has issued decisions addressing inquiry notice under Georgia law to determine if a hypothetical bona fide purchaser should have had notice that it could not acquire an interest superior to that of the transferee.  In both decisions, the court of appeals found a hypothetical bona fide purchaser would be deemed to have inquiry notice where old mortgages were still outstanding on the petition date.  *See* Gordon v. Novastar Mortgage Inc. (In re Hedrick),524 F.3d 1175 (11th Cir. 2008) and Watts v. Argent Mortg. Co., LLC (In re Hunt), 306 Fed.Appx. 455 (11th Cir. 2008).

[17]    Madison v. Gordon, 39 S.W.3d 604, 606 (Tex. Sup. Ct. 2001).

[18]    *Id.*

[19]    *Id.*

equivalent to the constructive notice deed registration affords."[20]   However, the Texas court

explained that "'ambiguous or equivocal possession which may appear subservient or attributable

to the possession of the holder of the legal title is not sufficiently indicative of ownership to impute

notice as a matter of law of the unrecorded rights of such possessor.'"[21]

HSBC cites several decisions where the party claiming an adverse interest in the property

also possessed the property.[22]  For example, in *Melvin R. Storm Family Partners, L.P. v. Northcutt*,

2007 WL 2204170 (Tex. App. 2007), the Texas court addressed the issue of whether possession by

a tenant under an unrecorded lease agreement placed a purchaser on constructive notice of such

tenant's rights under an oil and gas lease.[23]  This case is clearly distinguishable from the facts of this

case, however, because in the case before the Court the rights of the third-party tenant, Landmark

Chevrolet, are not in question.  Here, a third-party tenant, Landmark Chevrolet, not the claimant,

Landmark North, possessed the subject property.  Unlike the *Storm* case, the rights of the party in

possession in this case are simply not in question.

In *In re Battros,*1992 WL 695898 (Bankr. W.D. Tex. 1992), a Texas bankruptcy court held

under circumstances very similar to the present action that a third-party tenant's presence on property

did not trigger a duty of inquiry on the part of a hypothetical purchaser where the third-party tenant's

---

[20]     *Id.* at 607.

[21]     *Id.*(quoting Strong v. Strong, 98 S.W. 2d 346, 350 (Tex.Comm.App. 1936)).

[22]     Madison v. Gordon, 39 S.W.3d 604, 606 (Tex. Sup. Ct. 2001)(finding tenant's status in a multi-unit structure did not satisfy the criteria necessary to give a hypothetical purchaser constructive notice of the tenant's claim); Melvin R. Storm Family Partners, L.P. v. Northcutt, 2007 WL 2204170 (Tex. App. 2007)(finding constructive notice where the party who possessed the property claimed an adverse interest in same).

[23]     Melvin R. Storm Family Partners, L.P. v. Northcutt, 2007 WL 2204170 (Tex. App. 2007)(explaining that a purchaser of property maybe charged with notice of the rights of a party in possession of the property).

possession was compatible with the record titleholder's ownership.  Thus, under Texas law a purchaser is not charged with constructive notice of a claimant's interest in property when the property is occupied by a third-party tenant whose possession is compatible with the record titleholder's ownership.

In *Battros*, the debtors owned a 65 acre tract of land that they used as a weekend retreat.  In 1983, the debtors hired a caretaker to live on the property.  Five years later, the debtors transferred the property to their daughter upon her graduation from college, but the deed transferring the property was never properly recorded.  Following the transfer, the daughter continued to use the property as a weekend retreat and the caretaker continued to live on the property and care for same as she had before the transfer.  Two years later in 1989, the debtors filed bankruptcy and the bankruptcy trustee sought to avoid the transfer pursuant to § 544(a)(3).  The bankruptcy court found that the transfer could be avoided under § 544(a)(3) as one against which a bona fide purchaser for value would prevail.

The linchpin of the defendant's argument was that the presence of the caretaker living on the property triggered the requisite duty of inquiry under Texas law, such that a trustee could not be a bona fide purchaser without notice for purposes of § 544(a)(3).   The bankruptcy court found that a hypothetical purchaser would have no duty of inquiry unless the daughter could show that the caretaker's presence on the property was inconsistent with the debtors' record title.  The court found that the caretaker's presence on the land was not inconsistent with title in the debtors.  The court explained that "[p]ossession that could easily be referred to the person in whom stood the record title is not sufficient," to act as implied notice of adverse ownership."[24]   Inquiry is not "mandated by

---

[24]     *Id.*

ambiguous or equivocal possession which may appear subservient or attributable to the holder of legal title because it is not sufficiently indicative of adverse ownership."[25]  The court further noted that the caretaker's role never changed when the debtors transferred the property to their daughter. "From the point of view of an outsider, then, nothing changed."[26]

In both *Battros* and in the case before the Court, a third-party occupied the subject property in a manner subservient to the true owner.  In both cases, the third-party occupied the property both before and after the unrecorded transfer.  And in both cases, the third-party's possession and use of the property did not change following the unrecorded transfer.

In the case before the Court, the character of the property simply never changed.  Although the parties engaged in a highly sophisticated transaction where title was shuffled from one debtor entity or subsidiary to another, the character of Landmark Chevrolet's possession of the property never changed for almost twenty years.  Just as the court concluded in *Battros*, this Court finds under the circumstances of this case that a hypothetical purchaser would have had no reason to believe that Landmark Chevrolet was leasing the subject property from anyone other than Twentieth Century, the record owner and hypothetical seller.  Thus, Landmark Chevrolet's possession as a tenant did not constitute an "open, notorious, exclusive, visible appropriation inconsistent with ownership in the record titleholder," and did not trigger a duty of inquiry on the part of a subsequent hypothetical purchaser.[27]  As the *Battros* case recognized, it would require a speculative leap of faith to hold that a purchaser would discover a claimant's interest in property by inquiring of a third-party tenant

---

[25]     *Id.* at *2.

[26]     *Id.* at *2-3.

[27]     *Id.* at *3.

where the third-party tenant's possession is compatible with the record titleholder's ownership. Accordingly, the Court finds that a hypothetical purchaser would not have constructive notice of any adverse interest in the subject property, and Twentieth Century is entitled to avoid the transfer to Landmark North pursuant to § 544(a)(3).

## II.  11 U.S.C. § 550

HSBC argues that even if Twentieth Century is entitled to avoid the transfer to Landmark North, Twentieth Century cannot recover HSBC's mortgage interest pursuant to 11 U.S.C. § 550(b). The Court concludes, however, that § 550(b) is not applicable under the circumstances of this case. Although § 550(b) prohibits a debtor-in-possession from recovering property on an avoided transfer from a subsequent "good faith transferee for value," a "trustee's remedy of recovery is necessary only when the remedy of avoidance is inadequate."[28]  Because Twentieth Century's avoidance of HSBC's mortgage interest under § 544 is a complete remedy in and of itself, it is not necessary for the debtor-in-possession to take the additional step of recovering HSBC's mortgage interest pursuant to § 550.  A Texas bankruptcy court recently explained the difference between preservation and recovery of an avoided transfer, stating:

> Recovery of property or its value following avoidance of a transfer may or may not come into play. Section 550(a) is worded in permissive, not mandatory, language. Section 550(a) provides that, "... to the extent that a transfer is avoided... the trustee *may* recover ...." (emphasis added). Where this provision comes into play, the Court must determine, in its discretion, whether the recovery should be of the property transferred, or, in the alternative, its value.

---

[28]      In re Burns, 322 F.3d 421, 427 (6th Cir. 2003).

Where, as here, the Trustee avoids only a non-possessory transfer of a lien, the preservation of that lien for the benefit of the estate is sufficient to place the estate in exactly the same position it would have been in, but for the granting of the lien. There is no need for the Trustee to "recover" any property or its value under these circumstances. *See Suhar v. Burns (In re Burns)*, 322 F.3d 421, 427-28 (6th Cir.2003) (discussing avoidance and recovery as "distinct concepts and processes").[29]

Based upon the foregoing, the Court finds that § 550(b) does not apply to Twentieth Century's avoidance of HSBC's mortgage interest.

## III.     Twentieth Century is entitled to summary judgment on each of HSBC's counterclaims.

HSBC has asserted several counterclaims against Twentieth Century including: (a) equitable subrogation; (b) subrogation under deed of trust; (c) implied subordination; (d) equitable lien; (e) declaratory judgment; (f) constructive trust; and (g) unjust enrichment.    The Court believes that summary judgment is due to be entered in favor of Twentieth Century on each of the claims asserted by HSBC.

### A.     Equitable Subrogation and Equitable Lien[30]

HSBC argues under the doctrine of equitable subrogation that it should retain its first priority mortgage lien to the extent of $7,187,393.32, the amount of GMAC's prior lien-priority status, because the loan proceeds it advanced to Landmark North were used to pay off Twentieth Century's

---

[29]     In re Davis 2009 WL 1033194, * 7 (Bankr. E.D.Tex. 2009).

[30]     The Court cannot help but noticing the irony involved in HSBC's equitable subrogation and equitable lien theories in as much as it is actually the title insurance company that is defending this action and will bear the ultimate loss while it was their agent/attorney that created the problem in not recording the Warranty Deed in the first place.

debt to GMAC in that amount. HSBC argues that Twentieth Century is not prejudiced by permitting HSBC to be equitably subrogated to the first priority position of GMAC's prior liens because Twentieth Century conveyed the real property to Landmark North and expected Falcon to have a first priority mortgage lien on the property through the loan transaction. When Twentieth Century held title to the property, the property was subject to GMAC's mortgage and, thus, according to HSBC, equitably subrogating HSBC to GMAC merely substitutes one secured party for another.

Under Texas law, "'[a] bona fide purchaser will prevail over the holder of a prior equitable interest.'"[31] In *AMC Mortgage Services, Inc. v. Watts*, 260 S.W. 3d 582 (Tex. App. – Dallas 2008), the Texas court held that purchasers at a foreclosure sale were good faith purchasers for value with no notice of the mortgagee's purported right of equitable subrogation through satisfaction of the borrower's obligation to the original lender where nothing in the county real estate records indicated that the debt secured by a deed of trust was paid with proceeds of home equity extensions. Accordingly, the purchasers' interest in the property prevailed over the mortgagee's claim of equitable subrogation. Just like the purchasers in *Watts*, Twentieth Century enjoys the status of a bona fide purchaser for value without notice as discussed above.

Additionally, the Court finds that HSBC is not entitled to equitable subrogation due to its own negligence in failing to ensure that its mortgage interest had been properly perfected. While it is clear that Falcon and Lawyers Title both share some of the blame in failing to ensure that the Warranty Deed was recorded, HSBC was also negligent in failing to determine whether Landmark North's interest had been recorded when it purchased the mortgage interest secured by Landmark North's interest. HSBC is a sophisticated commercial entity that could have easily made this

---

[31]    AMC Mortgage Servs., Inc. v. Watts, 260 S.W. 3d 582, 587 (Tex. App. – Dallas 2008)(quoting NRG Exploration, Inc. v. Rauch, 671 S.W. 2d 649, 653 (Tex. App. – Austin 1984)).

determination and it cannot now seek to do by equity what it negligently failed to do in the first place.[32]

The Court also rejects HSBC's claim that Landmark North and Twentieth Century intended that HSBC have a first priority security interest or "equitable" lien on the subject property. Twentieth Century as a hypothetical bona fide purchaser under § 544(a)(3) prevails over the holder of a prior equitable interest under Texas law as discussed above.

### B.  Contractual Subrogation

HSBC argues that its Deed of Trust with Landmark North expressly provides for contractual subrogation.  The Deed of Trust provides as follows:

> If any or all of the proceeds of the Note have been used to extinguish, extend or renew any indebtedness heretofore existing against the Property, then to the extent of the funds so used, Lender shall be subrogated to all of the rights, claims, liens, titles and interests existing against the Property heretofore held by, or in favor of, the holder of such indebtedness and such former rights, claims, liens, titles, and interests, if any, are not waived but rather are continued in full force and effect in favor of Lender and are merged with the lien and security interest created herein as cumulative security for repayment of the Debt . . . .

HSBC argues that this provision shows that the parties contractually agreed to subrogation. Because a portion of the loan proceeds from Falcon were used to satisfy loans made to Twentieth Century by GMAC, HSBC asserts that pursuant to the Deed of Trust, the former claims of GMAC and the real estate taxes paid by Landmark North from the loan proceeds so the transaction would

---

[32]     *See* In re Badagliacca, 403 B.R. 288 (Bankr. W.D.N.Y. 2009)(finding mortgagee was not equitably subrogated to the rights of the prior mortgagee whose previously properly recorded mortgage was refinaced by the mortgage in question where the mortgagee failed to draft its documentation properly or thereafter check after its mortgage was recorded to insure that it was properly recorded).

close "are continued in full force and effect in favor of Lender," entitling HSBC to retain a first priority lien position in the aggregate amount of $7,504,428.16.

HSBC's contractual subrogation claim implicates two separate transactions and two separate borrowers: (1) GMAC's Deed of Trust with borrower Twentieth Century; and (2) HSBC's Deed of Trust with borrower Landmark North. HSBC argues that its Deed of Trust with Landmark North allows it to be subrogated to Twentieth Century's lender, GMAC. The Court finds as a matter of law that Landmark North could not have agreed to subrogate its lender, Falcon and then ultimately HSBC, to the rights of Twentieth Century's lender, GMAC, because Landmark North was a stranger to the Twentieth Century/GMAC transaction.[33]

Although HSBC argues that Twentieth Century was not really a stranger to the contractual subrogation provision in the Deed of Trust because Twentieth Century and Landmark North are related entities under the BHE umbrella, Falcon (HSBC's predecessor) specifically required BHE to create Landmark North as a bankruptcy remote single purpose entity to purchase the subject property from Twentieth Century. HSBC cannot now ask the Court to ignore that corporate formality and treat Landmark North and Twentieth Century as one in the same. Twentieth Century was a stranger to the Deed of Trust, and as such, Landmark North could not agree therein to subrogate HSBC to the lien priority status of GMAC.

A hypothetical bona fide purchaser would have taken the subject property with no notice of the Deed of Trust or HSBC's alleged contractual subrogation rights thereunder. Thus, Twentieth

---

[33]    *See* In re Pearce, 236 B.R. 261 (S.D. Ill. 1999)(finding mortgagee that advanced funds to enable Chapter 7 debtors to acquire mortgaged property but failed to perfect its mortgage could not rely on doctrine of subrogation to step into shoes of vendors' mortgagee and to claim benefit of properly perfected mortgage).

Century as a hypothetical bona fide purchaser necessarily prevails over HSBC's alleged contractual subrogation interest.[34]

### C.    Implied Subordination

HSBC alleges that an implied agreement existed between HSBC, Twentieth Century and a hypothetical purchaser that the hypothetical purchaser's interest in the subject property would be subordinated to HSBC's lien.  Twentieth Century points out that no Texas court has recognized implied subordination as an actionable theory of recovery.  Accordingly, the Court finds that HSBC's claim for implied subordination fails as a matter of law.

### D.    Unjust Enrichment

HSBC argues that Twentieth Century would be unjustly enriched in the event it could recover title to the subject property free and clear of the Deed of Trust after receiving the benefit of the loan proceeds.   Of the $20,000,000 in loan proceeds, HSBC asserts Twentieth Century directly benefitted to the extent Landmark North used $7,187,393.32 to satisfy Twentieth Century's outstanding debts owed to GMAC and to the extent of $317,034.84 which represented Twentieth Century's unpaid tax liability.  HSBC suggests that such a disparate result could not have been intended under § 544(a)(3).

This argument ignores the reality that old Twentieth Century will receive no benefit from its recovery under § 544(a)(3).   Instead, the property will be brought back into the debtor's

---

[34]     *See* In re Berg, 387 B.R. 524 (N.D. Ill. Bankr. 2008)(finding trustee prevailed over mortgagee's contractual subrogation rights as a bona fide purchaser without notice).

bankruptcy estate so that the proceeds thereof can be distributed to Twentieth Century's creditors, thus, fulfilling § 544(a)(3)'s purpose.  As the Eleventh Circuit has explained,  the purpose of § 544 is "to arm the trustee with sufficient powers to gather in the property of the estate.  Thus, the trustee is considered a *bona fide* purchaser of real property in the bankruptcy estate and may avoid obligations of the debtor that are avoidable by such a purchaser."[35]

For all the reasons stated herein, the Court finds that Twentieth Century is entitled to summary judgment on its claim to avoid the transfer of the subject property pursuant to § 544(a)(3) as well as each of HSBC's counterclaims in the present action.


**IV.    HSBC is entitled to summary judgment against William Heard, Landmark North and Landmark I-45.**

In conformity with the Court's earlier decision *Bill Heard Enterprises, Inc. v. Landmark North Freeway, Ltd. (In re Bill Heard Enterprises, Inc.),* 406 B.R. 98 (Bankr. N.D. Ala. 2009), the reasoning contained therein, and based upon the pleadings and evidence now before the Court, the Court finds that HSBC is entitled to summary judgment against William Heard, Landmark North and Landmark I-45.

Respondents filed a response to HSBC's motions for summary judgment admitting that they have no objection to the entry of partial summary judgment in favor of HSBC on counts 13 and 14 of HSBC's third party complaint, but asserted that judgment was not due to be entered in favor of HSBC on counts 1 and 2 because the Warranty Deed conveying the property to Landmark North was delivered to HSBC's successor Falcon.  Respondents assert that any deficiency in title was caused by the acts of the attorney and closing agent of the borrower in neglecting to record the Warranty

---

[35]        In re Halabi, 184 F.3d 1335, 1337 (11th Cir. 1999).

Deed. The record conclusively establishes however that under the loan documents Landmark North covenanted and agreed to protect and defend the validity and priority of the HSBC's lien and to pay any and all reasonable legal fees incurred by HSBC in connection with protecting its interests in the real property. As a general partner, Landmark I-45 is jointly and severally liable for all of the debts and obligations of Landmark North.

**DONE and ORDERED** this date: September 11, 2009.

/s/    Jack Caddell
Jack Caddell
United States Bankruptcy Judge

JAC/mhb
xc:    Debtor(s)
        Gerald Gillespy, attorney for Twentieth Century
        Derek Meek, attorney for Bill Heard Enterprises
        Jim Bussian, attorney for HSBC Bank USA
        Rita Dixon, Landmark North Freeway
        Charles Denaburg, Landmark I-45, Inc. & William T. Heard
        Richard Blythe, bankruptcy administrator