# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| In the Matter of: | } | |
| | } | |
| BILL HEARD ENTERPRISES, INC., et al. | } | CASE NO. 08-83029-JAC-11 |
| | } | CHAPTER 11 |
| | } | (Jointly Administered) |
| Debtor(s). | } | |
| | | |
| TWENTIETH CENTURY LAND CORP., | } | A.P. No. 09-80023-JAC-11 |
| | } | |
| Plaintiff(s), | } | |
| v. | } | |
| | } | |
| LANDMARK NORTH FREEWAY, LTD. | } | |
| ISTAR FINANCIAL, INC. d/b/a AUTOSTAR, | } | |
| SUCCESSOR IN INTEREST TO FALCON | } | |
| FINANCIAL, LLC, et al., | } | |
| | } | |
| Defendant(s). | } | |
| | | |
| HSBC BANK USA, AS TRUSTEE FOR THE | } | |
| REGISTERED HOLDERS OF FALCON | } | |
| AUTO DEALERSHIP LOAN TRUST 2003-1 | } | |
| LOAN-BACKED BONDS, SUCCESSOR-IN- | } | |
| INTEREST TO FALCON FINANCIAL, LLC | } | |
| d/b/a FALCON LENDING, LLC, | } | |
| | } | |
| Counterclaim Plaintiff | } | |
| v. | } | |
| | } | |
| TWENTIETH CENTURY LAND CORP., | } | |
| | } | |
| Counterclaim Defendant. | } | |

## MEMORANDUM OPINION

On September 11, 2009, this Court entered a memorandum opinion and order tentatively

granting summary judgment in favor of the plaintiff, Twentieth Century Land Corporation

("Twentieth Century"), and against the defendant, HSBC Bank USA ("HSBC"), a copy of which

is attached hereto and incorporated herein.[1]  The Court found that Twentieth Century was entitled to avoid its transfer of property to Landmark North Freeway, Ltd. ("Landmark North") under § 544(a)(3) of the Bankruptcy Code because the warranty deed transferring the property to Landmark North was not recorded and a hypothetical purchaser would not have had notice of documents recorded outside the chain of title.  The Court further found that the possession of Landmark Chevrolet, Ltd. ("Landmark Chevrolet") as a tenant under a written lease agreement with Landmark North was not sufficiently open, visible, exclusive, and unequivocal to impart constructive notice of Landmark North's interest in the subject property by virtue Landmark Chevrolet's possession of same.

The Court gave the parties additional time to submit a statement of disagreement, if any, with the ruling before the Court made the ruling final.  The parties having both submitted additional briefs, the Court now issues this supplemental and final opinion and a separate order granting summary judgment in favor of Twentieth Century.   The Court adopts the findings of fact and conclusions of law recited in the September 11, 2009 memorandum opinion as further supplemented herein.

## CONCLUSIONS OF LAW

Pursuant to 11 U.S.C. § 544(a)(3), a trustee or debtor-in-possession "may avoid a lien on real property if a hypothetical bona fide purchaser could have taken an interest greater than that held by the lienholder."[2]   Twentieth Century seeks to use its strong-arm powers under § 544(a)(3) as the

---

[1]      *See* Exhibit A, *In re Bill Heard Enterprises, Inc.,* 2009 WL 3055277 (Bankr. N.D. Ala. 2009).

[2]      *Gordon v. Terrace Mortg. Co. (In re Kim)*, 571 F.3d 1342, 1345 n. 3 (11th Cir. 2009).

2

debtor-in-possession to avoid the unrecorded transfer of the subject property to Landmark North. The existence of Twentieth Century's rights as a hypothetical bona fide purchaser depends on whether, under Texas law, a hypothetical purchaser would be charged with constructive notice of Landmark North's unrecorded interest in the property by virtue of Landmark Chevrolet's possession of the property as Landmark North's tenant.[3]

In its statement of disagreement with this Court's tentative memorandum opinion, HSBC produced a line of Texas cases, most of which were over 100 years old, setting forth the doctrine of attornment.[4] The term attornment is defined as "the act of a person who holds a lease-hold interest in land . . . to become the tenant of a stranger who has acquired the fee in the land" or "an act by which a tenant acknowledges his obligation to a new landlord."[5] HSBC cites these early Texas attornment cases for the proposition that the mere attornment of a grantor's tenant to the grantee without any apparent change in the possession or occupancy of the land is constructive notice to prospective purchasers of the grantee's interest under an unrecorded deed. HSBC argues that is the case here since at the time of the conveyance from Twentieth Century to Landmark North, Twentieth Century's tenant, Landmark Chevrolet, entered into a new written lease with Landmark North. HSBC contends under the doctrine of attornment that Landmark Chevrolet's continued possession of the property would trigger constructive notice to prospective purchasers of Landmark North's interest under the unrecorded warranty deed.

---

[3]  *Abney v. Cox Enters., (Fulton Air Service Inc.),* 777 F.2d 1521, 1523 (11th Cir. 1985)(recognizing that a "trustee's rights as a bona fide purchaser under § 544 are to be determined under applicable state law").

[4]  *See Duncan v. Matula,* 26 S.W. 638 (Tex. Civ. App. 1894); *Mainwarring v. Templeman*, 51 Tex. 205, 1879 WL 7660 (Tex. 1879); *Simmons v. Eakin*, 54 S.W.2d 1045 (Tex. Civ. App.-San Antonio 1932).

[5]  BLACK'S LAW DICTIONARY 130 (6TH ed.1990).

3

While the Court recognizes the doctrine of attornment, the Court finds that the doctrine does not change current Texas law under which "possession giving rise to constructive notice must be visible, open, exclusive, and unequivocal."[6] The Court further finds that the attornment cases relied upon by HSBC are distinguishable from the facts of this case in which the Court is concerned with the rights of a hypothetical bona fide purchaser because the cases relied upon by HSBC do not involve traditional purchasers for value, much less hypothetical purchasers under § 544(a)(3) of the Bankruptcy Code. Instead, the cases relied upon by HSBC involve purchasers at execution sales who took nothing more than the rights of the intervening judgment creditor under Texas law.

In *Mainwarring v. Templeman*, 51 Tex. 205, 1879 WL 7660 (Tex. 1879), the Texas Supreme Court found that a tenant's possession of real estate constituted constructive notice, as to third parties, of the title of the landlord. However, *Mainwarring* involved a situation in which the property was sold at an execution sale after the judgment debtor sold the property. Atcheson, the judgment debtor, sold 259 acres to Mainwarring in December of 1873, but Mainwarring did not record his deed until June of 1874. Before the sale, Atcheson was in possession of the property through a tenant. Immediately after the sale, the tenant became Mainwarring's tenant under a written lease and continued to occupy the land until after the date of a judgment taken against Atcheson. Templeman subsequently purchased the property at an execution sale under the intervening judgment dated February 13, 1874. Templeman then sued Mainwarring to quiet title and the court rendered judgment in favor of Mainwarring finding same to be in possession of the property through his tenant at the rendition of the judgment. The tenant's possession of the property was notice to the judgment creditor of Mainwarring's interest in the property.

---

[6]     *Madison v. Gordon*, 39 S.W.3d 604, 605 (2001).

4

On appeal, Templeman argued that the lower court erred in holding that mere attornment of the tenant "without any apparent change in the possession or occupancy of the land, was constructive notice to the creditors and persons owning the judgment at the date of its rendition . . . of the existence of the prior unrecorded conveyance. . . ."[7] The Texas Supreme Court concluded that attornment of the tenant of the grantor to the grantee, without any apparent change or occupancy of the land, was constructive notice of the prior unrecorded conveyance to Mainwarring. However, the court specifically recognized that Templeman, the purchaser as the execution sale, did "not claim as a subsequent purchaser for valuable consideration without notice."[8] Instead, Templeman relied upon the rights of the judgment creditor. The court further recognized that a judgment and a sale thereunder carries "just such rights to the purchaser under it as resided in the judgment creditor."[9]

In *Duncan v. Matula*, 26 S.W. 638 (Tex. Civ. App. 1894), the Texas Court of Civil Appeals held that where a landowner who was in possession of property by a tenant conveyed the land to the grantee and the tenant attorned to the grantee, and the deed was not recorded, the tenant's possession was constructive notice of the grantee's title to one who bought the land at a subsequent execution sale. Prior to the conveyance, the landowner was in possession of the property through a tenant. Within three of four days after the sale, the grantee rented the house to the same tenant. Subsequently, the plaintiff, Duncan, purchased the property at an execution sale before the grantee recorded the deed to the property. The court concluded that where a landowner, who is in possession by a tenant, conveys the land, and the tenant attorns to the grantee, and the deed is not

---

[7]     *Templeman v. Mainwarring*, 51 Tex. 205, 1879 WL 7660 *5 (Tex. 1879).

[8]     *Id.* at *1.

[9]     *Id.*

5

recorded, the possession of such tenant is constructive notice of the grantee's title to one who buys the land at a subsequent execution sale against the grantor.

Similarly, in *Simmons v. Eakin*, 54 S.W.2d 1025 (Tex. Civ. App. 1932), the Texas Court of Civil Appeals again recognized that possession of land through a tenant by a purchaser under a parol sale was sufficient to put a judgment creditor on inquiry as to the purchaser's ownership of the land before seizure under attachment.

The case before the Court does not involve a judgment creditor situation as did the cases relied upon by HSBC. In *First State Bank Amarillo v. Jones*, 183 S.W. 874 (Tex. 1916), the Supreme Court of Texas explained that a judgment creditor is not a bona fide purchaser. The court stated:

> A judgment lien holder is not in the same attitude as an innocent purchaser for value without notice. The latter has expended money in good faith to the amount of the purchase price of the land, and is justly entitled to be held harmless. It is right that the loss under such circumstances should be visited upon the landowner whose negligence, in failing to give notice through the deed records of his ownership, occasioned the loss, rather than it should fall upon the innocent purchaser who was without fault. The judgment lien holder is in a different attitude. He is not in any sense an innocent purchaser. If his lien fails to attach, he loses nothing. His judgment still remains unimpaired in its full amount. In such a case, even though the owner of the land has been negligent in failing to provide a correct record notice of his title, still his negligence has not resulted in injury to the judgment creditor.[10]

Twentieth Century contends that unlike a purchaser at an execution sale, a hypothetical purchaser under § 544(a)(3) is generally the victim of fraud. A hypothetical purchaser is sold property by someone who no longer owns it and is misled into believing that the property belongs to that person despite the existence of a visible tenant on the property.

---

[10]     *First State Bank Amarillo v. Jones*, 183 S.W. 874, 876 (Tex. 1916).

The issue before this Court is not whether a judgment creditor or purchaser at an execution sale would be charged with constructive notice of Landmark North's unrecorded interest in the subject property. Rather, this Court must determine what circumstances would give rise to Landmark North defeating the interest of a hypothetical bona fide purchaser for value under § 544(a)(3) of the Bankruptcy Code and current Texas case law.

In *Fletcher v. Minton*, 217 S.W.3d 755, 759 (Tex. App. - Dallas 2007), the Texas Court of Appeals summarized applicable Texas law regarding notice which will defeat the protection otherwise afforded a bona fide purchaser as follows:

> The Texas Property Code provides for the recording of real property transfers and limits the validity of unrecorded instruments as follows:
>
> > (a) A conveyance of real property ... is void as to a creditor or to a subsequent purchaser for a valuable consideration without notice unless the instrument has been acknowledged, sworn to, or proved and filed for the record as required by law.
> >
> > (b) The unrecorded instrument is binding ... on a subsequent purchaser who does not pay a valuable consideration or who has notice of the instrument.
>
> Tex. Prop.Code Ann. § 13.001 (Vernon 2006). Thus, an unrecorded conveyance is binding on those who have knowledge of the conveyance. *Burris v. McDougald,* 832 S.W.2d 707, 709 (Tex.App.-Corpus Christi 1992, no writ). A person who acquires property in good faith, for value, and without notice of any third-party claim or interest is a bona fide purchaser. Status as a bona fide purchaser is an affirmative defense to a title dispute. *Madison v. Gordon,* 39 S.W.3d 604, 606 (Tex.2001).
>
> Notice will defeat the protection otherwise afforded a bona fide purchaser. *City of Richland Hills v. Bertelsen,* 724 S.W.2d 428, 429 (Tex.App.-Fort Worth 1987, no writ). "Notice" is broadly defined as information concerning a fact actually communicated to a person, derived by him from a proper source, or presumed by law to have been acquired. *Flack v. First Nat'l Bank,* 148 Tex. 495, 226 S.W.2d 628, 631 (1950). Notice may be actual or constructive. *Id.* Actual notice results from personal information or knowledge, as well as those facts which reasonable inquiry would have disclosed. Constructive notice is notice the law imputes to a person not having

7

personal information or knowledge. *Madison,* 39 S.W.3d at 606; *Flack,* 226 S.W.2d at 631-632.

A purchaser of land is charged with constructive notice of all claims of a party in possession of the property that the purchaser might have discovered had he made proper inquiry. *Apex Financial Corp. v. Garza,* 155 S.W.3d 230, 234 (Tex.App.-Dallas 2004, pet. denied). **This duty to ascertain the rights of a party in possession of the property arises when the possession is open, visible, exclusive, and unequivocal.** *Id. see also, Madison,* 39 S.W.3d at 606.

(emphasis added)

In *Madison v. Gordon*, 39 S.W.3d 604, 607 (Tex. 2001), the Supreme Court of Texas found that "Texas law requires visible, open, exclusive and unequivocal possession to put a purchaser on notice of a possessor's claims." Constructive notice is not triggered under current Texas law by a tenant's possession of property where the tenant's possession "is compatible with another's ownership assertion."[11]

In *Madison*, the tenant in a multifamily four-plex unit, Gordon, sued to recover title to the property. While incarcerated, Gordon signed a warranty deed transferring the four-plex to a bondsman. The deed was properly recorded. The bondsman later conveyed the property to Gordon's attorney, Williams, who properly recorded the deed. Subsequently, Williams transferred the property to his fiancé, Madison, by warranty deed. After Gordon's release, he continued to reside in the four-plex and subsequently sued Madison, Williams and the bondsman to recover title to the property claiming that the initial transfer was intended as a mortgage and that the subsequent transfer to Williams was fraudulent. As to Madison, Gordon claimed that she could not assert bona fide purchaser as an affirmative defense because she had actual or, alternatively, constructive notice

---

[11]          *Madison v. Gordon*, 39 S.W.3d 604, 607 (Tex. 2001).

8

of Gordon's claims to the property.[12]  On appeal to the Supreme Court of Texas, the sole issue was whether Gordon's possession gave Madison constructive notice of his claims.  The court found that Gordon's status as a tenant in one unit of a  multifamily rental property was not sufficiently exclusive or unequivocal to provide constructive notice of Gordon's ownership claim.

The *Madison* court explained that "one purchasing land may be charged with constructive notice of an occupant's claims" under the implied-notice doctrine "if a court determines that the purchaser has a duty to ascertain the rights of a third-party possessor."[13]  The duty of inquiry arises "only if the possession is visible, open, exclusive, and unequivocal."[14]  The *Madison* court concluded, however, that "ambiguous or equivocal possession which may appear subservient or attributable to the possession of the holder of the legal title is not sufficiently indicative of ownership to impute notice as a matter of law of the unrecorded rights of such possessor."[15]  Turning to the facts of the case, the court concluded that Madison was a bona fide purchaser, not subject to Gordon's claims, writing:

> Gordon's possession as a tenant in a multi-unit structure did not satisfy the criteria necessary to give Madison constructive notice.  His possession was neither exclusive nor unequivocal.  As rental property, one would expect occupants on the property.

---

[12]     She testified at the trial that she had no actual notice of Gordon's claims.

[13]     *Id.* at 606.

[14]     *Id.*(citing *Strong v. Strong*, 128 Tex. 470, 98 S.W.2d 346, 350 (1936) wherein the court found that claimant residing as a member of the record title owner's family was not open or exclusive).  *See also Boyd v. Orr*, 170 S.W.2d 829, 834 (Tex. Civ. App. -Texarkana 1943, writ ref'd)(holding minor children's occupancy in mother's homestead was "not the character of possession as would constitute constructive notice"); *DeGuerin v. Jackson*, 50 S.W.2d 443, 448 (Tex. Civ. App. - Texarkana 1932)(holding there was no "visible" circumstance pointing to claimant as possessor of field and noting that "all authorities agree" that the possession must be "open, visible, and unequivocal, to impute notice to a potential purchaser, *aff'd,* 124 Tex. 424, 77 S.W. 2d 1041 (1935)).

[15]     *Madison*, 39 S.W.3d at 607 (quoting *Strong v. Strong*, 128 Tex. 470, 98 S.W.2d 346, 348 (1936)).

9

Indeed, Gordon was one of four tenants living on the property and there was nothing to indicate he would later claim title. Gordon's occupancy simply does not meet the exclusive requirements necessary to impute notice of his claims to Madison.

Nor does Gordon's possession meet *Strong*'s requirement that possession be unequivocal. When an occupants possession is compatible with another's ownership assertion, the occupant's possession cannot be said to be unequivocal. Here, Gordon's occupancy was compatible with Williams' assurances of ownership. Thus his possession was "ambiguous or equivocal possession which may [have] appear[ed] subservient or attributable to" Williams. *See Strong*, 98 S.W.2d at 350. Accordingly, his possession was not unequivocal.[16]

The *Madison* court did not question the ultimate outcome in several earlier cases finding possession was sufficient to place a purchaser on constructive notice stating, "But in each of these cases, the occupant lived in a single-unit dwelling.[17] Arguably, this sole possession of property implicates visibility, openness, exclusivity, and unequivocality."[18] The *Madison* court noted, however, that it would have been better to assess *"Strong's* requirements that the possession be visible, open, exclusive, and unequivocal."[19]

The case of *Apex Fin. Corp. v. Garza*, 155 S.W.3d 230 (Tex. Civ. App. 2004) confirms that *Madison* represents the current state of Texas law that possession alone does not trigger constructive notice. While the mere possession of the subject property by the holder of an unrecorded quitclaim deed, Garza, was insufficient to put the holder of a sheriff's deed, Apex, on constructive notice of Garza's claim of possession, the *Apex* court determined that Garza's possession was visible, open, and exclusive under the following facts:

---

[16]    *Id.* at 607.

[17]    This Court notes that the Supreme Court of Texas did not mention nor recognize the doctrine of attornment in the *Madison* decision even though Gordon was one of four tenants living on the property.

[18]    *Id.*

[19]    *Id.*

10

There is evidence in the record that Garza bought the property in 1997 and thereafter, until evicted by Apex, used the property for his trucking business on a daily basis. Garza had signs on his trucks identifying his business, A-Garza Trucking. He parked his trucks, did mechanical work on them, and washed them at the property. The property is located in an industrial or warehouse area and has one building on it. Garza used the building as the office for his business and had someone working in the office Monday through Friday, and sometimes on Saturday. The holder of an outstanding lien on the property testified that Garza's trucks, with signs identifying the business, were on the property all the time. He said a person could see that Garza was doing business there. We conclude the evidence supports the conclusion that Garza's possession was open and visible.

Turning to the element of unequivocality, the *Apex* court distinguished its facts from the *Madison* case, writing:

> In *Madison,* in which the supreme court held that possession of the property was equivocal, the purchaser had direct dealings with the record title owner, her fiancé, who assured her of his ownership of the multi-unit rental property. *Madison*, 39 S.W.3d at 605. The supreme court concluded the possession was not unequivocal because it was "compatible with another's ownership assertion." *Id.* at 607. However, the property here is not a multi-unit rental property like the property in *Madison*. Further, there is no evidence that Apex had any direct dealings with LaCrosse, the record title owner. Apex presented no evidence that it received any assurances of ownership from LaCrosse.[20]

Given these facts, the court concluded that Garza's possession was not "compatible with another's assertion of ownership."[21] Thus, Garza's possession was deemed unequivocal, and the Court charged Apex with constructive notice of Garza's unrecorded interest in the property.[22]

Twentieth Century contends that the case of *Apex Fin. Corp. v. Garza*, 155 S.W.3d 230 (Tex. Civ. App. 2004) further highlights the key distinction for purposes of constructive notice between a purchaser at an execution sale who has no dealings with the record title owner and a

---

[20]     *Apex Fin. Corp. v. Garza*, 155 S.W.3d 230, 235 (Tex. Civ. App. 2004).

[21]     *Id.*

[22]     *Id.*

11

hypothetical bona fide purchaser who is affirmatively misled by the record title owner regarding his ownership interest. In *Apex,* the holder of an unrecorded quitclaim deed, Garza, brought an action against the holder of a sheriff's deed, Apex, to determine the rights and interests of the parties. The Texas Court of Appeals found that the holder of the quitclaim deed had superior rights to the property where the quitclaim deed holder's possession was visible, open, exclusive, and unequivocal so as to put the sheriff's deed holder on constructive notice of Garza's claim of possession.

Apex claimed that it was a bona fide purchaser of the property of the property without notice of Garza's claim of ownership under the unrecorded quitclaim deed. While the court of appeals noted that "a purchaser at an execution sale can qualify as a bona fide purchaser if the purchaser would have been considered a bona fide purchaser had the sale been made voluntary and in person by the judgment debtor," the real issue before the court was not whether Apex could qualify as a bona fide purchaser but whether Apex actually qualified as a bona fide purchaser.

It is also important to note that in *Apex* the property was occupied by the same party who claimed the unrecorded interest in same. In the case before the court, the third-party tenant, Landmark Chevrolet, was in possession of the property. The only modern Texas case to address the analogous third-party tenant situation is *In re Battros*, 1992 WL 695898 (Bankr. W.D. Tex. 1992). In *Battros,* the bankruptcy court concluded that a third-party tenant's presence did not trigger a duty of inquiry on the part of a hypothetical purchaser where the tenant's possession was compatible with the record titleholder's ownership of the property.

In *Battros,* the debtors owned a 65 acre tract of land that they had long used as a weekend retreat. Prepetition, the debtors hired Maria Pavila to live on and take care of the property. She cleaned the house while her husband helped to keep the grounds. Upon the graduation of their

Case 09-80023-JAC    Doc 115    Filed 11/16/09    Entered 11/16/09 14:39:18    Desc Main
Document        Page 12 of 33

daughter from college, the debtors transferred the property to their daughter and told Pavila that she would be working for their daughter. Following the transfer, the daughter continued to use the property as a weekend retreat and the caretaker continued to live on the property and care for same as she had before the transfer. Two years later, the debtors filed bankruptcy. Post-petition, the daughter discovered that the deed had not been properly filed and the bankruptcy trustee sought to avoid the transfer pursuant to § 544(a)(3).

The bankruptcy court found that the transfer could be avoided under § 544(a)(3) as one against which a bona fide purchaser for value would prevail. The third-party tenant's presence on property did not trigger a duty of inquiry on the part of a hypothetical purchaser where the third-party tenant's possession was compatible with the record titleholder's ownership. The bankruptcy court held under Texas law, that a purchaser is not charged with constructive notice of a claimant's interest in property when the property is occupied by a third-party tenant whose possession is compatible with the record titleholder's ownership.

The daughter argued that, in Texas, the presence of Pavila on the land would have served as sufficient notice to prevent a subsequent purchaser from becoming a bona fide purchaser without notice. The daughter argued that the presence of Pavila on the land constituted an actual possession of the land as her tenant or agent which was so inconsistent with ownership in the record title owner as to place any purchaser on inquiry notice of her interest, such that the trustee could not be a bona fide purchaser without notice for purposes of § 544(a)(3).

The bankruptcy court found that a hypothetical purchaser would have no duty of inquiry unless the daughter could show that the caretaker's presence on the property was inconsistent with the debtors' record title ownership interest in the property. The court concluded that the caretaker's

presence on the land was not inconsistent with the debtor's record title interest. The court explained that "[p]ossession that could easily be referred to the person in whom stood the record title is not sufficient," to act as implied notice of adverse ownership."[23] Inquiry is not "mandated by ambiguous or equivocal possession which may appear subservient or attributable to the holder of legal title because it is not sufficiently indicative of adverse ownership."[24] The court further noted that the caretaker's role never changed when the debtors transferred the property to their daughter. "From the point of view of an outsider, then, nothing changed."[25]

In both *Battros* and in the case before the Court, a third-party occupied the subject property in a manner subservient to the record title owner. In both cases, the third-party tenant occupied the property both before and after the unrecorded transfer. And in both cases, the third-party tenant's possession and use of the property did not change following the unrecorded transfer.

Landmark Chevrolet operated as a Chevrolet franchised dealership on the property at issue in this case since the 1970's. In October of 1985, Bill Heard Enterprises ("BHE"), purchased the Chevrolet dealership and Twentieth Century leased the property to the dealership. At all times, Landmark Chevrolet operated the automobile dealership on the subject property under the name Landmark Chevrolet. Landmark Chevrolet's operation of the property as an automobile dealership never materially change after it first began leasing the property from Twentieth Century in 1985 until the filing of BHE's bankruptcy petition. There was absolutely no visible change to Landmark Chevrolet's possession or operation of the property after Twentieth Century transferred the subject

---

[23] *Id.*

[24] *Id.* at *2.

[25] *Id.* at *2-3.

14

property to Landmark North in December of 2002. Just as in the *Battros* case, the character of the property and the use of same simply never changed after the unrecorded transfer. Landmark Chevrolet's use of the property did not change following the transfer. As stated in *Battros*, "From the viewpoint of an outsider, then, nothing changed."

The Court further notes that similar to the rental property in the *Madison* case, the property at issue in this case was traditional rental property within the automobile industry in which it is common for a dealership to lease or rent the property upon which it is located. Landmark Chevrolet's possession of the property was ambiguous or equivocal and appeared subservient or attributable to that of Twentieth Century, the record title holder. Landmark Chevrolet's possession was not sufficiently indicative of ownership to impute notice as a matter of law of Landmark North's unrecorded rights thereto. As the *Battros* court recognized, it would require a speculative leap of faith to hold that a purchaser would discover a claimant's interest in the property by inquiring of the third-party tenant where the third-party tenant's possession is compatible with the record titleholder's ownership. Although the parties engaged in a highly sophisticated transaction where title was shuffled from one debtor entity or subsidiary to another, the character of Landmark Chevrolet's possession of the property did not changed for almost twenty years. At all times both before and after the transfer, the property had been known as the Landmark Chevrolet dealership.

Landmark Chevrolet's possession of the subject property was not unequivocal because the dealership's possession of the property would have been compatible with Twentieth Century's title record ownership representations. Accordingly, the Court finds that a hypothetical purchaser would not have constructive notice of any adverse interest in the subject property, and Twentieth Century is entitled to avoid the transfer to Landmark North pursuant to § 544(a)(3).

Case 09-80023-JAC    Doc 115    Filed 11/16/09    Entered 11/16/09 14:39:18    Desc Main
Document      Page 15 of 33

The Court adopts all other findings of fact and conclusions of law set forth in its September

11, 2009 memorandum opinion reported at 2009 WL 3055277 (Bankr. N.D. Ala. 2009).

**DONE and ORDERED** this date: November 16, 2009.

/s/   Jack Caddell
Jack Caddell
United States Bankruptcy Judge

# EXHIBIT A

In re Bill Heard Enterprises, Inc.  2009 WL 3055277, 11 (Bkrtcy.N.D.Ala.,2009)


**United States Bankruptcy Court,**
**N.D. Alabama,**
**Northern Division.**
**In the Matter of BILL HEARD ENTERPRISES, INC., et al. Debtor(s).**
**Twentieth Century Land Corp., Plaintiff(s),**
**v.**
**Landmark North Freeway, Ltd. Istar Financial, Inc. d/b/a Autostar, Successor in Interest to** **Falcon Financial, LLC, et al., Defendant(s).**
**HSBC Bank USA, as Trustee for The Registered Holders Of Falcon Auto Dealership Loan Trust 2003-1 Loan-Backed Bonds, Successor-in-Interest to Falcon Financial, LLC d/b/a Falcon Lending,** **LLC, Counterclaim Plaintiff**
**v.**
**Twentieth Century Land Corp., Counterclaim Defendant.**


**Bankruptcy No. 08-83029-JAC-11.**
**Adversary No. 09-80023-JAC-11.**


**Sept. 11, 2009.**


Amanda Beckett, Derek F. Meek, Marc P. Solomon, Burr & Forman LLP, Birmingham, AL, Edward J. Peterson, III, Stichter, Riedel, Blain & Prosser, P.A., Tampa, FL, for Debtor.


## MEMORANDUM OPINION

JACK CADDELL, United States Bankruptcy Judge.


*1 Now before the Court for consideration are cross motions for summary judgment filed by Twentieth Century Land Corporation ("Twentieth Century") and HSBC Bank USA ("HSBC"). Twentieth Century seeks an order granting summary judgment as to its claims in the above styled action and as to all counterclaims asserted by HSBC. HSBC seeks an order granting summary judgment on Twentieth Century's amended complaint and partial summary judgment on its counterclaims against Twentieth Century. Also before the Court is HSBC's motion for partial summary judgment against William Heard and motion for partial summary judgment against Landmark North Freeway, Ltd. and Landmark I-45, Inc.

17

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, as made applicable to this adversary proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law ." FN1 "In making this determination, the court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." FN2 Where both parties seek summary judgment, the court must consider each motion independently and apply the applicable standards to each motion to determine whether summary judgment is appropriate under either motion.FN3

FN1. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Gray v. Manklow ( In re Optical Tech., Inc.), 246 F.3d 1332, 1334 (11th Cir.2001); and Fitzpatrick v. City of Atlanta, 2 F.3d 1112 (11 th Cir.1993).

FN2. Chapman v. A1 Transp., 229 F.3d 1012, 1023 (11th Cir.2000).

FN3. Smith v. Fendley (In re Allied Sign Co., Inc.), 280 B.R. 694 (Bankr.S.D.Ala.2001).

Upon due consideration of the pleadings and respective submissions of the parties, the Court finds that there are no genuine issues of material fact in the present case and concludes that summary judgment is due to be entered in favor of Twentieth Century on all counts and against HSBC. The Court further finds that summary judgment is due to be entered in favor of HSBC and against William Heard, Landmark North Freeway, Ltd. and Landmark I-45, Inc.

## PROCEDURAL HISTORY

On September 28, 2008, Bill Heard Enterprises, Inc. ("BHE") and several related entities filed for relief under Chapter 11 of the Bankruptcy Code and sought joint administration of their petitions. Prepetition, the debtors owned and operated fourteen automobile dealerships in seven states. On February 6, 2009, Twentieth Century, one of the jointly administered debtors, filed a complaint against Landmark North Freeway, Ltd. ("Landmark North"), a Texas limited partnership, and others to avoid the prepetition transfer of real property located at 9111 North Freeway, Houston, Texas to Landmark North pursuant to 11 U.S.C. § 544(a)(3) and to determine the validity, priority or extent of Landmark North's interest in the property. Twentieth Century seeks to set aside the prepetition transfer on the grounds that the Warranty Deed transferring the property from Twentieth Century to Landmark North was never recorded and is, therefore, void under Texas law as to a subsequent purchaser for value without notice.

18

*2 On March 19, 2009, Twentieth Century filed an amended complaint adding HSBC, as Trustee for the Registered Holders of Falcon Auto Dealership Loan Trust 2003-1 Loan Backed Bonds ("HSBC"), as a defendant. HSBC is the current holder of a Deed of Trust pursuant to which Landmark North purported to "mortgage, grant, bargain, sell, pledge, assign, warrant, transfer and convey ... and grant a security interest ...." in the subject property to Falcon Financial, LLC. The Deed of Trust secured a $20,000,000 loan from Falcon to Landmark North. Through the amended complaint, Twentieth Century seeks to avoid Landmark North's granting of the Deed of Trust to Falcon, HSBC's predecessor in interest.

On June 17, 2009, this Court entered an order granting HSBC's motion to dismiss all claims asserted by Landmark North and William T. Heard ("Heard") against HSBC for failure to state a claim upon which relief could be granted. FN4 The Court found that plaintiffs, Landmark North and Heard, clearly waived their claims against HSBC by virtue of certain provisions contained in the loan documents and further found that Falcon did not stand in a fiduciary relationship with plaintiffs. On July 21, 2009, the Court entered an order in conformity with its findings in Bill Heard Enterprises, Inc. v. Landmark North Freeway, Ltd. ( In re Bill Heard Enterprises, Inc.), 406 B.R. 98 (Bankr.N.D.Ala.2009), granting Falcon's motion to dismiss the third-party complaint and counterclaim of Landmark North and Heard against Falcon for failure to state a claim upon which relief could be granted. The case is now before the court on cross motions for summary judgment filed by Twentieth Century and HSBC.

FN4. See Bill Heard Enterprises, Inc. v. Landmark North Freeway, Ltd. ( In re Bill Heard Enterprises, Inc.), 406 B.R. 98 (Bankr.N.D.Ala.2009).

## FACTUAL BACKGROUND

The property at issue is located at 9111 North Freeway, Houston, Texas. Landmark Chevrolet has operated as a Chevrolet franchised dealership on the property since the 1970's. On October 1, 1985, Twentieth Century purchased the subject property.

In October of 1985, BHE, through Landmark Chevrolet Corporation which is now known as Landmark Chevrolet, Ltd., purchased the Chevrolet dealership ("Landmark Chevrolet") and Twentieth Century leased the property to the dealership. At all times, Landmark Chevrolet operated the automobile dealership on the subject property under the name Landmark Chevrolet. Landmark Chevrolet's operation of the property as an automobile dealership was visible to the public and did not materially change since it first began leasing the property from Twentieth Century in 1985 until the filing of BHE's bankruptcy petition.

19

Falcon Financial, LLC ("Falcon"), is a company that specializes in lending to automobile dealerships. In October of 2002, Falcon agreed to make a $20,000,000.00 loan to BHE. To make the loan, Falcon required BHE to form a "bankruptcy remote single purpose entity" that would act both as the borrower under the loan and owner of the subject property securing the loan. On November 15, 2002, BHE formed the bankruptcy remote single purpose entity named Landmark North Freeway, Ltd.

*3 On December 4, 2002, as part of the loan transaction, Twentieth Century, as grantor, executed a Warranty Deed conveying the subject property to Landmark North, as grantee.FN5 There was no visible change to Landmark Chevrolet's possession or operation of the property after Twentieth Century transferred the subject property to Landmark North.

FN5. Although the Warranty Deed was signed by Heard on December 4, 2002, the deed is dated November 15, 2002.

The December 4, 2002 Warranty Deed transferring the property from Twentieth Century to Landmark North was never recorded. The Warranty Deed, a Deed of Trust by which Landmark North mortgaged the subject property to Falcon, and other loan documents were forwarded to Falcon's counsel who then forwarded the Deed of Trust and other loan documents to the escrow agent, Lawyers Title Insurance Company, for closing and recording. The Warranty Deed was not, however, forwarded to Lawyers Title. The original, unrecorded, Warranty Deed was found in the files of Falcon Financial's counsel during this litigation. Falcon's attorney, Greg Murphy, Esq., testified in his deposition that he did not know the Warranty Deed had not been recorded until he first learned of this lawsuit.

On December 12, 2002, Lawyers Title closed the loan and distributed the loan proceeds as instructed. Landmark North directed that $7,187,393.32 of the loan proceeds be used to satisfy existing mortgages on the property in favor of General Motors Acceptance Corporation ("GMAC"). After the loan closing, GMAC recorded three documents entitled "Release of Lien," which evidenced that three separate GMAC deeds of trust on the subject property had been released. Landmark North also used $317,034.84 of the loan proceeds to pay Twentieth Century's outstanding tax liability. The remaining loan proceeds were advanced directly to BHE to refinance debt it had incurred over time.

On December 23, 2002, Lawyers Title recorded the Deed of Trust in the real property records of Harris County, Texas. Although the Warranty Deed had not been recorded, on December 23, 2002, Lawyers Title issued a final Mortgage Policy of Title Insurance insuring Falcon from any defect in, invalidity or unenforceability in its lien on the subject property. Because the Warranty Deed was not

20

recorded, a claim was made under the title policy and Lawyers Title is providing the defense in this adversary proceeding.

On December 23, 2002, Falcon assigned its interest in the loan documents to ABN AMRO Bank, NV. Subsequently, on July 18, 2003, ABN assigned its interest in the loan documents to HSBC.

In connection with the loan, Landmark North entered into a lease agreement with Landmark Chevrolet for the property. The real property consists of two tracts of land divided into four parcels. The property tax records from the Harris County Tax Accessor-Collector indicate that Landmark Chevrolet is the owner of at least one of the parcels. In addition to the tax records, the Harris County Appraisal District records identify Landmark Chevrolet as the owner of one of the parcels.

*4 Since 1985 and at the time of the loan transaction in 2002, Landmark Chevrolet operated a car dealership, service center and related facilities on the property. The Landmark Chevrolet dealership was located adjacent to Interstate 45, a heavily trafficked freeway that runs through the city of Houston. It is undisputed that Landmark Chevrolet signage was visible to the public throughout the property and that there was no signage anywhere on the property for Twentieth Century nor Landmark North.

## CONCLUSIONS OF LAW

**I. Twentieth Century is entitled to summary judgment pursuant to 11 U.S.C. § 544(a)(3).**
Section 544(a)(3) of the Bankruptcy Code provides that:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is avoidable by-

* * * *

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the statues of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such purchaser exists.

21

Section 544(a)(3) authorizes the trustee or a debtor-in-possession to avoid any real property transfer "that is not perfected and enforceable against a bona fide purchaser at the time the petition is filed." FN6 The Eleventh Circuit has explained that the purpose of § 544 is "to arm the trustee with sufficient powers to gather in the property of the estate. Thus, the trustee is considered a bona fide purchaser of real property in the bankruptcy estate and may avoid obligations of the debtor that are avoidable by such a purchaser." FN7 The parties agree that the trustee or debtor-in-possession's rights as a bona fide purchaser under § 544 are to be determined under applicable state law, which in this case is Texas law as the subject property is located in Texas and the loan documents provide that Texas law is the governing law state.

FN6. Matter of Hamilton, 125 F.3d 292, 298 (5th Cir.1997).

FN7. In re Halabi, 184 F.3d 1335, 1337 (11th Cir.1999).

## A. Chain of Title

Under Texas law, "[a] conveyance of an interest in real property ... is void as to a subsequent purchaser if the interest was not recorded at the time of the subsequent purchase and the purchaser paid valuable consideration without notice of the unrecorded interest." FN8 The Fifth Circuit has explained that a bona fide purchaser under Texas law "is one who acquires (apparent) legal title to property in good faith for a valuable consideration without ... notice of an infirmity in the title." FN9

FN8. Matter of Hamilton, 125 F.3d 292, 298 (5th Cir.1997). See also Tex. Prop.Code Ann. § 13.001(a), which reads:
(a) A conveyance of real property or an interest in real property or a mortgage or deed of trust is void as to a creditor or to a subsequent purchaser for a valuable consideration without notice unless the instrument has been acknowledged, sworn to, or proved and filed for record as required by law.

FN9. See Hamilton, 125 F.3d at 298.

Twentieth Century argues that the Warranty Deed is void under Tex. Prop.Code § 13.001 as to a subsequent purchaser for value without notice because it was not filed for record as required by law. Accordingly, under § 544(a)(3) of the Bankruptcy Code, Twentieth Century asserts that it can avoid

22

the Warranty Deed and the conveyance of the property from Twentieth Century to Landmark North, because the conveyance would be void as to a bona fide purchaser under Texas law.

\*5 Under § 544 the actual knowledge of the trustee or debtor-in-possession is irrelevant. Instead, the issue is whether a hypothetical purchaser would be charged with implied knowledge of a prior unrecorded ownership interest, by constructive or inquiry notice.FN10 "Under Texas law, constructive notice is given by properly recorded instruments and charged to a person as a matter of law, regardless of the person's actual knowledge." FN11 Because the Warranty Deed was not recorded as of the petition date, a hypothetical purchaser could not be charged with constructive notice of the deed as a matter of law.

FN10. Id. at 299.

FN11. Id.

Instead, HSBC argues that Twentieth Century cannot avoid its transfer of the subject property because a hypothetical purchaser under § 544(a)(3) would have had constructive notice of Landmark North's interest in the subject property by virtue of the recorded Deed of Trust, the information contained in Harris County tax accessor's records and appraisal records identifying Landmark Chevrolet as the owner of one parcel of the subject property, and by virtue of GMAC's release of its mortgages when the transfer occurred.

Under Texas law, a purchaser is not charged with constructive notice of any document recorded outside of its chain of title. Instead a purchaser of real estate is only charged with constructive notice of "information contained in instruments recorded which are in his chain of title at the time he purchases the property." FN12 "Chain of title refers to the documents which show the successive ownership history of the land. The chain of title is 'the successive conveyances, commencing with the patent from the government, each being a perfect conveyance of the title down to and including the conveyance to the present holder.' " FN13 "A party is not charged with constructive notice of a recorded instrument which is not within his chain of title." FN14

FN12. See Cadle Co. v. Caamano, 930 S.W.2d 917, 920 (Tex.App.-Houston 1996)(explaining that a purchaser of land is only charged with information contained in instruments of record which are in his chain of title at the time he purchases the property); Chesapeake Exploration, LLC v. Valence Operating, 2008 WL 4240486 \* 10 (S.D.Tex.2008)(explaining that a party is not charged with constructive notice of a recorded instrument which is not within his chain of title).

23

FN13. Chesapeake Exploration, LLC v. Valence Operating, 2008 WL 4240486 *10 (S.D.Tex.2008).


FN14. Id.


Although HSBC argues that Landmark Chevrolet's identification in the tax records as the owner of one parcel of the subject property and the recorded Deed of Trust imposed a duty of inquiry on any hypothetical purchaser, it is undisputed that neither the tax records nor the recorded Deed of Trust were in the chain of title to the subject property. The chain of title was broken when Landmark North's ownership interest in the property was not recorded. Accordingly, the recorded Deed of Trust which attached to Landmark North's unrecorded ownership interest fell outside a hypothetical purchaser's chain of title. Because these documents are not in the chain of title, a hypothetical purchaser could not be charged with constructive notice of same as a matter of law.


Furthermore, bankruptcy courts interpreting Texas law have held that a hypothetical purchaser under § 544(a)(3) has no duty to inquire into a security interest where recorded documents indicate that the interest has been released.FN15 Accordingly, the Court finds that a hypothetical purchaser would not have a duty to inquire into the nature of GMAC's recorded releases where the releases simply provided that GMAC's deeds of trust on the subject property had been satisfied and released.FN16 Although HSBC argues that a hypothetical purchaser would ask whether the recorded mortgage releases were the result of refinancing, the Court finds that HSBC's argument is speculative as it is just as likely that the mortgages were simply satisfied.


FN15. In re Tilton, 297 B.R. 478 (E.D.Tex.2003)(finding that a hypothetical purchaser under § 544(a)(3) does not have a duty to inquire into a security interest where the recorded documents indicate that the interest is no longer enforceable).


FN16. The Court notes that the Eleventh Circuit has issued decisions addressing inquiry notice under Georgia law to determine if a hypothetical bona fide purchaser should have had notice that it could not acquire an interest superior to that of the transferee. In both decisions, the court of appeals found a hypothetical bona fide purchaser would be deemed to have inquiry notice where old mortgages were still outstanding on the petition date. See Gordon v. Novastar Mortgage Inc. ( In re Hedrick ), 524 F.3d 1175 (11th Cir.2008) and Watts v. Argent Mortg. Co., LLC ( In re Hunt ), 306 Fed.Appx. 455 (11th Cir.2008).

## B. Third-Party Tenant's Possession of Property

*6 HSBC argues that a hypothetical purchaser would have had constructive notice of Landmark North's interest in the subject property by virtue of Landmark Chevrolet's possession of same. In Madison v. Gordon, 39 S.W.3d 604 (Tex.Sup.Ct.2001), the Texas Supreme Court explained that '[o]ne purchasing land may be charged with constructive notice of an occupant's claims." FN17 The implied notice doctrine "applies if a court determines that the purchaser has a duty to ascertain the rights of a third-party possessor." FN18 The duty arises "only if the possession is visible, open, exclusive, and unequivocal." FN19 "Possession that meets these requirements ... affords notice of title equivalent to the constructive notice deed registration affords." FN20 However, the Texas court explained that " 'ambiguous or equivocal possession which may appear subservient or attributable to the possession of the holder of the legal title is not sufficiently indicative of ownership to impute notice as a matter of law of the unrecorded rights of such possessor.' " FN21

FN17. Madison v. Gordon, 39 S.W.3d 604, 606 (Tex.Sup.Ct.2001).

FN18. Id.

FN19. Id.

FN20. Id. at 607.

FN21. Id. (quoting Strong v. Strong, 128 Tex. 470, 98 S.W.2d 346, 350 (Tex.Comm.App.1936)).

HSBC cites several decisions where the party claiming an adverse interest in the property also possessed the property.FN22 For example, in Melvin R. Storm Family Partners, L.P. v. Northcutt, 2007 WL 2204170 (Tex.App.2007), the Texas court addressed the issue of whether possession by a tenant under an unrecorded lease agreement placed a purchaser on constructive notice of such tenant's rights under an oil and gas lease.FN23 This case is clearly distinguishable from the facts of this case, however, because in the case before the Court the rights of the third-party tenant, Landmark Chevrolet, are not in question. Here, a third-party tenant, Landmark Chevrolet, not the claimant, Landmark North, possessed the subject property. Unlike the Storm case, the rights of the party in possession in this case are simply not in question.

FN22. Madison v. Gordon, 39 S.W.3d 604, 606 (Tex.Sup.Ct.2001)(finding tenant's status in a multi-unit structure did not satisfy the criteria necessary to give a hypothetical purchaser constructive notice of the tenant's claim); Melvin R. Storm Family Partners, L.P. v. Northcutt, 2007 WL 2204170 (Tex.App.2007)(finding constructive notice where the party who possessed the property claimed an adverse interest in same).

FN23. Melvin R. Storm Family Partners, L.P. v. Northcutt, 2007 WL 2204170 (Tex.App.2007)(explaining that a purchaser of property maybe charged with notice of the rights of a party in possession of the property).

In In re Battros, 1992 WL 695898 (Bankr.W.D.Tex.1992), a Texas bankruptcy court held under circumstances very similar to the present action that a third-party tenant's presence on property did not trigger a duty of inquiry on the part of a hypothetical purchaser where the third-party tenant's possession was compatible with the record titleholder's ownership. Thus, under Texas law a purchaser is not charged with constructive notice of a claimant's interest in property when the property is occupied by a third-party tenant whose possession is compatible with the record titleholder's ownership.

In Battros, the debtors owned a 65 acre tract of land that they used as a weekend retreat. In 1983, the debtors hired a caretaker to live on the property. Five years later, the debtors transferred the property to their daughter upon her graduation from college, but the deed transferring the property was never properly recorded. Following the transfer, the daughter continued to use the property as a weekend retreat and the caretaker continued to live on the property and care for same as she had before the transfer. Two years later in 1989, the debtors filed bankruptcy and the bankruptcy trustee sought to avoid the transfer pursuant to § 544(a)(3). The bankruptcy court found that the transfer could be avoided under § 544(a)(3) as one against which a bona fide purchaser for value would prevail.

*7 The linchpin of the defendant's argument was that the presence of the caretaker living on the property triggered the requisite duty of inquiry under Texas law, such that a trustee could not be a bona fide purchaser without notice for purposes of § 544(a)(3). The bankruptcy court found that a hypothetical purchaser would have no duty of inquiry unless the daughter could show that the caretaker's presence on the property was inconsistent with the debtors' record title. The court found that the caretaker's presence on the land was not inconsistent with title in the debtors. The court explained that "[p]ossession that could easily be referred to the person in whom stood the record title is not sufficient," to act as implied notice of adverse ownership." FN24 Inquiry is not "mandated by ambiguous or equivocal possession which may appear subservient or attributable to the holder of

Case 09-80023-JAC    Doc 115    Filed 11/16/09    Entered 11/16/09 14:39:18    Desc Main
Document    Page 26 of 33

legal title because it is not sufficiently indicative of adverse ownership." FN25 The court further noted that the caretaker's role never changed when the debtors transferred the property to their daughter. "From the point of view of an outsider, then, nothing changed." FN26

FN24. Id.


FN25. Id. at *2.


FN26. Id. at *2-3.


In both Battros and in the case before the Court, a third-party occupied the subject property in a manner subservient to the true owner. In both cases, the third-party occupied the property both before and after the unrecorded transfer. And in both cases, the third-party's possession and use of the property did not change following the unrecorded transfer.


In the case before the Court, the character of the property simply never changed. Although the parties engaged in a highly sophisticated transaction where title was shuffled from one debtor entity or subsidiary to another, the character of Landmark Chevrolet's possession of the property never changed for almost twenty years. Just as the court concluded in Battros, this Court finds under the circumstances of this case that a hypothetical purchaser would have had no reason to believe that Landmark Chevrolet was leasing the subject property from anyone other than Twentieth Century, the record owner and hypothetical seller. Thus, Landmark Chevrolet's possession as a tenant did not constitute an "open, notorious, exclusive, visible appropriation inconsistent with ownership in the record titleholder," and did not trigger a duty of inquiry on the part of a subsequent hypothetical purchaser.FN27 As the Battros case recognized, it would require a speculative leap of faith to hold that a purchaser would discover a claimant's interest in property by inquiring of a third-party tenant where the third-party tenant's possession is compatible with the record titleholder's ownership. Accordingly, the Court finds that a hypothetical purchaser would not have constructive notice of any adverse interest in the subject property, and Twentieth Century is entitled to avoid the transfer to Landmark North pursuant to § 544(a)(3).


FN27. Id. at *3.

**II. 11 U.S.C. § 550**

*8 HSBC argues that even if Twentieth Century is entitled to avoid the transfer to Landmark North, Twentieth Century cannot recover HSBC's mortgage interest pursuant to 11 U.S.C. § 550(b). The Court concludes, however, that § 550(b) is not applicable under the circumstances of this case. Although § 550(b) prohibits a debtor-in-possession from recovering property on an avoided transfer from a subsequent "good faith transferee for value," a "trustee's remedy of recovery is necessary only when the remedy of avoidance is inadequate." FN28 Because Twentieth Century's avoidance of HSBC's mortgage interest under § 544 is a complete remedy in and of itself, it is not necessary for the debtor-in-possession to take the additional step of recovering HSBC's mortgage interest pursuant to § 550. A Texas bankruptcy court recently explained the difference between preservation and recovery of an avoided transfer, stating:

FN28. In re Burns, 322 F.3d 421, 427 (6th Cir.2003).

Recovery of property or its value following avoidance of a transfer may or may not come into play. Section 550(a) is worded in permissive, not mandatory, language. Section 550(a) provides that, "... to the extent that a transfer is avoided ... the trustee may recover ...." (emphasis added). Where this provision comes into play, the Court must determine, in its discretion, whether the recovery should be of the property transferred, or, in the alternative, its value.

Where, as here, the Trustee avoids only a non-possessory transfer of a lien, the preservation of that lien for the benefit of the estate is sufficient to place the estate in exactly the same position it would have been in, but for the granting of the lien. There is no need for the Trustee to "recover" any property or its value under these circumstances. See Suhar v. Burns ( In re Burns ), 322 F.3d 421, 427-28 (6th Cir.2003) (discussing avoidance and recovery as "distinct concepts and processes").FN29

FN29. In re Davis 2009 WL 1033194, * 7 (Bankr.E.D.Tex.2009).

Based upon the foregoing, the Court finds that § 550(b) does not apply to Twentieth Century's avoidance of HSBC's mortgage interest.

**III. Twentieth Century is entitled to summary judgment on each of HSBC's counterclaims.**

HSBC has asserted several counterclaims against Twentieth Century including: (a) equitable subrogation; (b) subrogation under deed of trust; (c) implied subordination; (d) equitable lien; (e) declaratory judgment; (f) constructive trust; and (g) unjust enrichment. The Court believes that

28

summary judgment is due to be entered in favor of Twentieth Century on each of the claims asserted by HSBC.

## A. Equitable Subrogation and Equitable LienFN30

FN30. The Court cannot help but noticing the irony involved in HSBC's equitable subrogation and equitable lien theories in as much as it is actually the title insurance company that is defending this action and will bear the ultimate loss while it was their agent/attorney that created the problem in not recording the Warranty Deed in the first place.

HSBC argues under the doctrine of equitable subrogation that it should retain its first priority mortgage lien to the extent of $7,187,393.32, the amount of GMAC's prior lien-priority status, because the loan proceeds it advanced to Landmark North were used to pay off Twentieth Century's debt to GMAC in that amount. HSBC argues that Twentieth Century is not prejudiced by permitting HSBC to be equitably subrogated to the first priority position of GMAC's prior liens because Twentieth Century conveyed the real property to Landmark North and expected Falcon to have a first priority mortgage lien on the property through the loan transaction. When Twentieth Century held title to the property, the property was subject to GMAC's mortgage and, thus, according to HSBC, equitably subrogating HSBC to GMAC merely substitutes one secured party for another.

*9 Under Texas law, " '[a] bona fide purchaser will prevail over the holder of a prior equitable interest.' " FN31 In AMC Mortgage Services, Inc. v. Watts, 260 S.W.3d 582 (Tex.App.-Dallas 2008), the Texas court held that purchasers at a foreclosure sale were good faith purchasers for value with no notice of the mortgagee's purported right of equitable subrogation through satisfaction of the borrower's obligation to the original lender where nothing in the county real estate records indicated that the debt secured by a deed of trust was paid with proceeds of home equity extensions. Accordingly, the purchasers' interest in the property prevailed over the mortgagee's claim of equitable subrogation. Just like the purchasers in Watts, Twentieth Century enjoys the status of a bona fide purchaser for value without notice as discussed above.

FN31. AMC Mortgage Servs., Inc. v. Watts, 260 S.W.3d 582, 587 (Tex.App.-Dallas 2008)(quoting NRG Exploration, Inc. v. Rauch, 671 S.W.2d 649, 653 (Tex.App.-Austin 1984)).

Additionally, the Court finds that HSBC is not entitled to equitable subrogation due to its own negligence in failing to ensure that its mortgage interest had been properly perfected. While it is clear that Falcon and Lawyers Title both share some of the blame in failing to ensure that the Warranty Deed was recorded, HSBC was also negligent in failing to determine whether Landmark North's interest had been recorded when it purchased the mortgage interest secured by Landmark

29

North's interest. HSBC is a sophisticated commercial entity that could have easily made this determination and it cannot now seek to do by equity what it negligently failed to do in the first place.FN32

FN32. See In re Badagliacca, 403 B.R. 288 (Bankr.W.D.N.Y.2009)(finding mortgagee was not equitably subrogated to the rights of the prior mortgagee whose previously properly recorded mortgage was refinaced by the mortgage in question where the mortgagee failed to draft its documentation properly or thereafter check after its mortgage was recorded to insure that it was properly recorded).

The Court also rejects HSBC's claim that Landmark North and Twentieth Century intended that HSBC have a first priority security interest or "equitable" lien on the subject property. Twentieth Century as a hypothetical bona fide purchaser under § 544(a)(3) prevails over the holder of a prior equitable interest under Texas law as discussed above.

## B. Contractual Subrogation

HSBC argues that its Deed of Trust with Landmark North expressly provides for contractual subrogation. The Deed of Trust provides as follows:

If any or all of the proceeds of the Note have been used to extinguish, extend or renew any indebtedness heretofore existing against the Property, then to the extent of the funds so used, Lender shall be subrogated to all of the rights, claims, liens, titles and interests existing against the Property heretofore held by, or in favor of, the holder of such indebtedness and such former rights, claims, liens, titles, and interests, if any, are not waived but rather are continued in full force and effect in favor of Lender and are merged with the lien and security interest created herein as cumulative security for repayment of the Debt....

HSBC argues that this provision shows that the parties contractually agreed to subrogation. Because a portion of the loan proceeds from Falcon were used to satisfy loans made to Twentieth Century by GMAC, HSBC asserts that pursuant to the Deed of Trust, the former claims of GMAC and the real estate taxes paid by Landmark North from the loan proceeds so the transaction would close "are continued in full force and effect in favor of Lender," entitling HSBC to retain a first priority lien position in the aggregate amount of $7,504,428.16.

*10 HSBC's contractual subrogation claim implicates two separate transactions and two separate borrowers: (1) GMAC's Deed of Trust with borrower Twentieth Century; and (2) HSBC's Deed of

Trust with borrower Landmark North. HSBC argues that its Deed of Trust with Landmark North allows it to be subrogated to Twentieth Century's lender, GMAC. The Court finds as a matter of law that Landmark North could not have agreed to subrogate its lender, Falcon and then ultimately HSBC, to the rights of Twentieth Century's lender, GMAC, because Landmark North was a stranger to the Twentieth Century/GMAC transaction.FN33

FN33. See In re Pearce, 236 B.R. 261 (S.D.Ill.1999)(finding mortgagee that advanced funds to enable Chapter 7 debtors to acquire mortgaged property but failed to perfect its mortgage could not rely on doctrine of subrogation to step into shoes of vendors' mortgagee and to claim benefit of properly perfected mortgage).

Although HSBC argues that Twentieth Century was not really a stranger to the contractual subrogation provision in the Deed of Trust because Twentieth Century and Landmark North are related entities under the BHE umbrella, Falcon (HSBC's predecessor) specifically required BHE to create Landmark North as a bankruptcy remote single purpose entity to purchase the subject property from Twentieth Century. HSBC cannot now ask the Court to ignore that corporate formality and treat Landmark North and Twentieth Century as one in the same. Twentieth Century was a stranger to the Deed of Trust, and as such, Landmark North could not agree therein to subrogate HSBC to the lien priority status of GMAC.

A hypothetical bona fide purchaser would have taken the subject property with no notice of the Deed of Trust or HSBC's alleged contractual subrogation rights thereunder. Thus, Twentieth Century as a hypothetical bona fide purchaser necessarily prevails over HSBC's alleged contractual subrogation interest. FN34

FN34. See In re Berg, 387 B.R. 524 (N.D.Ill.Bankr.2008)(finding trustee prevailed over mortgagee's contractual subrogation rights as a bona fide purchaser without notice).

## C. Implied Subordination

HSBC alleges that an implied agreement existed between HSBC, Twentieth Century and a hypothetical purchaser that the hypothetical purchaser's interest in the subject property would be subordinated to HSBC's lien. Twentieth Century points out that no Texas court has recognized implied subordination as an actionable theory of recovery. Accordingly, the Court finds that HSBC's claim for implied subordination fails as a matter of law.

## D. Unjust Enrichment

Case 09-80023-JAC   Doc 115   Filed 11/16/09   Entered 11/16/09 14:39:18   Desc Main
Document    Page 31 of 33

HSBC argues that Twentieth Century would be unjustly enriched in the event it could recover title to the subject property free and clear of the Deed of Trust after receiving the benefit of the loan proceeds. Of the $20,000,000 in loan proceeds, HSBC asserts Twentieth Century directly benefitted to the extent Landmark North used $7,187,393.32 to satisfy Twentieth Century's outstanding debts owed to GMAC and to the extent of $317,034.84 which represented Twentieth Century's unpaid tax liability. HSBC suggests that such a disparate result could not have been intended under § 544(a)(3).

This argument ignores the reality that old Twentieth Century will receive no benefit from its recovery under § 544(a)(3). Instead, the property will be brought back into the debtor's bankruptcy estate so that the proceeds thereof can be distributed to Twentieth Century's creditors, thus, fulfilling § 544(a)(3)'s purpose. As the Eleventh Circuit has explained, the purpose of § 544 is "to arm the trustee with sufficient powers to gather in the property of the estate. Thus, the trustee is considered a bona fide purchaser of real property in the bankruptcy estate and may avoid obligations of the debtor that are avoidable by such a purchaser." FN35

FN35. In re Halabi, 184 F.3d 1335, 1337 (11th Cir.1999).

*11 For all the reasons stated herein, the Court finds that Twentieth Century is entitled to summary judgment on its claim to avoid the transfer of the subject property pursuant to § 544(a)(3) as well as each of HSBC's counterclaims in the present action.

## IV. HSBC is entitled to summary judgment against William Heard, Landmark North and Landmark I-45.

In conformity with the Court's earlier decision Bill Heard Enterprises, Inc. v. Landmark North Freeway, Ltd. ( In re Bill Heard Enterprises, Inc.), 406 B.R. 98 (Bankr.N.D.Ala.2009), the reasoning contained therein, and based upon the pleadings and evidence now before the Court, the Court finds that HSBC is entitled to summary judgment against William Heard, Landmark North and Landmark I-45.

Respondents filed a response to HSBC's motions for summary judgment admitting that they have no objection to the entry of partial summary judgment in favor of HSBC on counts 13 and 14 of HSBC's third party complaint, but asserted that judgment was not due to be entered in favor of HSBC on counts 1 and 2 because the Warranty Deed conveying the property to Landmark North was delivered to HSBC's successor Falcon. Respondents assert that any deficiency in title was caused by the acts of the attorney and closing agent of the borrower in neglecting to record the Warranty Deed. The record conclusively establishes however that under the loan documents Landmark North covenanted and agreed to protect and defend the validity and priority of the HSBC's lien and to pay any and all reasonable legal fees incurred by HSBC in connection with protecting its interests in the

Case 09-80023-JAC    Doc 115    Filed 11/16/09    Entered 11/16/09 14:39:18    Desc Main
Document      Page 32 of 33

real property. As a general partner, Landmark I-45 is jointly and severally liable for all of the debts and obligations of Landmark North.


DONE and ORDERED.

Bkrtcy.N.D.Ala.,2009.
In re Bill Heard Enterprises, Inc.
Slip Copy, 2009 WL 3055277 (Bkrtcy.N.D.Ala.)

END OF DOCUMENT


In re Bill Heard Enterprises, Inc.  2009 WL 3055277, 11 (Bkrtcy.N.D.Ala.,2009)